IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



ALLEGHENY CASUALTY COMPANY, )
)
)
Plaintiff, )
)
v. ) Case No. 1:17-cv-01108 (IDD)
)
RIVER CITY ROOFING, LLC, )
RODNEY G. YOUNG, KAREN R. YOUNG, )
and STERLING YOUNG, )
)
)
Defendants. )

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons stated below, the Court has granted Plaintiff's Motion.

### I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party may move the court for summary judgment on any claim or defense, and the court shall grant the motion and enter judgment as a matter of law where the moving party has demonstrated that "there is no genuine dispute as to any material fact" in the case. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, sufficiently allows a reasonable jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). The governing substantive law will determine which facts are material, and a fact will be material if a dispute as to that fact affects the outcome of the suit. *Id.*

To defeat an otherwise properly supported motion for summary judgment, the non-

1

moving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006).

## II.   PROCEDURAL HISTORY

On October 3, 2017, Allegheny Casualty Company filed its Complaint against River City Roofing, LLC, Rodney G. Young, Karen R. Young, and Sterling Young to enforce the general indemnity agreement between the parties. (Dkt. No. 1.) Defendants filed their answer on October 31, 2017. (Dkt. No. 4.) On January 24, 2018, the Honorable Liam O'Grady ordered that this case be reassigned to the undersigned Magistrate Judge per the parties' request. (Dkt. No. 16.) Although discovery in this matter closes on May 11, 2018, Plaintiff filed its Motion for Summary Judgment on January 11, 2018. (Dkt. No. 7.) This Court granted Defendants' Consent Motion for Extension of Time to File a Response on January 24, 2018. (Dkt. No. 15.) Pursuant to that Order, Defendants filed their Response to Plaintiff's Motion on January 29, 2018, (Dkt. No. 17), and Plaintiff filed its Reply on February 5, 2018. (Dkt. No. 18.) This Court held a hearing on Plaintiff's Motion on February 9, 2018. (Dkt. No. 20.) After hearing argument from each party, the undersigned took this matter under advisement. (*Id.*)

## III.   UNCONTESTED FACTS

The following facts are undisputed by the parties based on a reading of the pleadings and the briefs in support of and in opposition to Plaintiff's Motion for Summary Judgment. In 2014, Plaintiff issued performance and payment bonds on behalf of River City Roofing, LLC

("RCR"), as principal, for three construction projects that Defendants subcontracted with Branch & Associates, Inc. ("Branch") to perform.[1] (Dkt. No. 8 at 2.) In November 2014, the parties entered into a general indemnity agreement ("GIA") in which Defendants agreed to be jointly and severally liable to Plaintiff in the event of any loss on the bonds. (*Id.*) Rodney G. Young, Karen R. Young, and Sterling Young (collectively, the "individual Defendants") executed the GIA as individual indemnitors. (*Id.* at 3.) Rodney G. Young also executed the GIA on behalf of RCR in his capacity as a managing member. (*Id.*)

The GIA provides that if Plaintiff makes a payment in "good faith" on Defendants' behalf under the belief that Plaintiff is liable for the payment, then Plaintiff is "entitled to charge" Defendants for that payment regardless of whether liability existed.[2] (Dkt. No. 8-2 at 2.) Additionally, the GIA requires Defendants to deposit sufficient collateral with Plaintiff "as soon as liability exists or is asserted" against Plaintiff, regardless of whether Plaintiff has made a payment on Defendants' behalf. (Dkt. No. 8 at 3.)

In February 2017, Plaintiff received a payment bond claim from American Builders & Contractors Supply Co. ("ABC Supply"), which is one of RCR's suppliers. (Dkt. No. 8 at 4.) Although ABC Supply demanded $27,312.01, Plaintiff paid $16,440.17 to ABC Supply. (*Id.*) In May 2017, Plaintiff received a performance bond claim from Branch for a sum of $105,333.47, which Plaintiff investigated using a consulting agency. (*Id.* at 5.) Plaintiff expended $13,388.94

---

[1] Although the parties stipulate that the bonds were issued in 2014, Plaintiff submitted as exhibits bonds dated August 2015, September 2015, and March 2016. (Dkt. No. 8-1.)

[2] The GIA specifically states that

> In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether or not such liability, necessity or expediency existed.*

(Dkt. No. 8-2 at 2) (emphasis added).

3

conducting the Branch claim investigation. (*Id.* at 6.) In September 2017, Plaintiff received a payment bond claim from Brock Associates, LLC ("Brock"), another RCR supplier. (*Id.* at 4.) Brock claims it is owed $5,189.40; however, Plaintiff has not made any payment to Brock. (*Id.*) Plaintiff has demanded that Defendants post collateral sufficient to protect Plaintiff. (*Id.* at 6.)

## IV. DISCUSSION

### A. Applicable Law

The parties do not dispute that Virginia law governs the interpretation of the GIA. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (a federal court sitting in a diversity jurisdiction case must apply choice of law rules of the forum state). Under Virginia law, unambiguous terms of an express indemnity agreement between a surety and a subcontractor are given their plain meaning, and the "surety is entitled to stand upon the letter of his contract." *Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works*, 722 F.2d 1160, 1163 (4th Cir. 1983); *Bell BCI Co. v. Old Dominion Demolition Corp.*, 294 F. Supp. 2d 807, 812 (E.D. Va. 2003). In other words, an express indemnification contract controls the relationship between surety and subcontractor rather than applying implied indemnity principles. *See Fidelity*, 722 F.2d at 1163. And notably, contract interpretation is generally an issue for the court to decide. *See Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 613 (4th Cir. 2002) ("[C]ontract construction is a question of law").

### B. Analysis

In its Memorandum in Support of its Motion for Summary Judgment, Plaintiff argues that the GIA's terms clearly and unambiguously require Defendants to reimburse Plaintiff for the payment made to ABC Supply, post sufficient collateral, and pay the cost of investigating the claims and enforcing the GIA. (Dkt. No. 8 at 7.) Defendants argue that Plaintiff's payment to

ABC Supply is not covered under the bonds that Plaintiff issued and that therefore Plaintiff is not entitled to summary judgment on the breach of contract claim. (Dkt. No. 17 at 6.) Defendants also assert that the bond claims for which Plaintiff demands collateral (the Brock and Branch claims) are inchoate such that specific performance is inappropriate. (Dkt. No. 17 at 7.)

### 1. Breach of Contract

Defendants' contention that the ABC Supply payment is not covered under the bonds is misplaced. Defendants explain that they had two subcontracts with Branch, one for roofing and one for siding materials. (Dkt. 17 at 6–7.) Defendants assert that Plaintiff bonded only the roofing subcontract and not the siding materials subcontract and that ABC Supply provided siding materials, which are not covered under the bonded roofing subcontract. (*Id.*) Defendants support their assertion with the Declaration of Defendant Rodney G. Young. (Dkt. No. 17-1.)

Even if Defendants offered more than this scintilla of evidence, whether ABC Supply provided materials to Defendants under a bonded or non-bonded subcontract is immaterial because the GIA's terms are not contingent on the bonds that Plaintiff issued. Specifically, Defendants agreed to reimburse Plaintiff for "any payment . . . made by [Plaintiff] in good faith . . . whether or not [] liability, necessity or expediency existed." (Dkt. No. 8-2 at 2.) This provision is standard in indemnity agreements and has been "uniformly sustained and upheld, subject to a single exception to be noted." *Fidelity*, 722 F.2d at 1163 (collecting cases upholding the "good faith" provision). The single exception the *Fidelity* court noted was "when the payment has been made 'through fraud or lack of good faith' on the part of the surety," and the court emphasized that "any challenge to such payment must be rested solely on that claim of bad faith or fraud." *Id.* at 1163–64 (quoting *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967)).

As Plaintiff points out, Defendants do not argue any lack of good faith on Plaintiff's part

5

in paying ABC Supply. Indeed, Defendants solely rely on the contention that the ABC Supply payment is not covered by the bonds. Defendants do not dispute that Plaintiff paid ABC Supply. Defendants do not challenge the substance or authenticity of the GIA submitted as an exhibit to Plaintiff's Motion for Summary Judgment. Because the GIA's plain language requires Defendants to reimburse Plaintiff for any payments made in good faith and Defendants do not raise any genuine issue of material fact as to Plaintiff's good faith, Plaintiff is entitled to summary judgment on its breach of contract claim.

## 2. Specific Performance

Likewise, Plaintiff is entitled to summary judgment on its specific performance claim because Defendants fail to raise a genuine issue of material fact as to their obligation to post collateral. The GIA plainly states that Defendants are required to deposit sufficient collateral with Plaintiff upon Plaintiff's demand "as soon as liability exists or is *asserted* against [Plaintiff.]" (Dkt. No. 8-2 at 2) (emphasis added). The parties do not dispute that Branch and Brock have *asserted* claims for payment and that Plaintiff has demanded collateral from Defendants. Instead, Defendants urge the Court to find no value in Branch's asserted claim because Plaintiff expended $13,388.94 on investigating the claim and failed to "present any findings or assertions of the validity or strength of the Branch claims."[3] (Dkt. No. 17 at 7.) However, Defendants failed to explain why Plaintiff must present such findings. Even at oral argument, Defendants failed to articulate why the Court should not consider the Branch and Brock claims as *asserted* liability requiring Defendants to deposit sufficient collateral with Plaintiff. Accordingly, Defendants must deposit sufficient collateral that Plaintiff has demanded.

---

[3] The Court also finds Defendants' use of *Am. Ins. Co v. Egerton* unconvincing because the indemnity agreement in *Egerton* did not present the same language as the GIA. *See Egerton*, 59 F.3d 165 (Table), 1995 WL 371452, at *1 n.3 (4th Cir. 1995). Here, the GIA's collateral provision unambiguously requires Defendants to deposit collateral in an amount that Plaintiff, in its sole judgment, deems sufficient to protect it from loss, regardless of whether Defendants dispute the asserted claims or whether Plaintiff has paid the claims. (*See* Dkt. No. 8-2 at 2.)

6

### *3. Investigation & Enforcement Costs*

In addition to seeking reimbursement for the ABC Supply payment, Plaintiff seeks reimbursement for the funds spent investigating the Branch claim. (Dkt. No. 18 at 5–6.) Defendants dispute that Plaintiff's investigation costs were "reasonable and necessary given the nature of the claims." (Dkt. No. 17 at 4.) However, the GIA requires Defendants to indemnify Plaintiff for any "expenses of whatsoever kind or nature" without qualification of reasonableness or necessity. Specifically, Defendants agreed to indemnify Plaintiff from

> [E]xpenses which [Plaintiff] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the [Defendants] to perform or comply with the covenants and conditions of [the GIA] or (3) In enforcing any of the covenants and conditions of [the GIA].

(Dkt. No. 8-2 at 2.) Even if the GIA included a reasonableness test, Defendants failed to provide any evidence that suggests Plaintiff was unreasonable in conducting its investigation of the Branch claim. *See Beale*, 769 F.2d at 214 ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Therefore, Plaintiff is entitled to reimbursement of its investigation costs.

Finally, Plaintiff seeks its attorney's fees spent to resolve this suit. (Dkt. No. 8 at 6.) Defendants do not appear to challenge whether Plaintiff is entitled to attorney's fees. (*See* Dkt. No. 17 at 4.) The GIA explicitly provides for Plaintiff to recover "costs of services rendered by counsel" to pursue enforcement of the GIA. (Dkt. No. 8-2 at 2.) Accordingly, Plaintiff shall be awarded its attorney's fees spent in this suit.

### V.     <u>CONCLUSION</u>

Defendants failed to state any genuine issue concerning a material fact in this matter. Instead, Defendants raise issues concerning contract interpretation, which is a question of law to be determined by the Court. For the reasons set forth above, the Court finds that the parties'

general indemnity agreement unambiguously requires Defendants to (1) reimburse Plaintiff for the payment made to ABC Supply, which was $16,440.17; (2) deposit sufficient collateral that Plaintiff has demanded, which is $5,189.40 for the Brock claim and $105,333.47 for the Branch claim; and (3) pay Plaintiff's investigation and enforcement costs.

/s/
Ivan D. Davis
United States Magistrate Judge

April 13, 2018
Alexandria, Virginia